UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENTRELL WILLIS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　Defendant. | Case No. 1:19-cv-00761-BAM<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 50) |

**I.　　BACKGROUND**

Plaintiff Kentrell Willis ("Plaintiff") is a federal prisoner proceeding *pro se* and *in forma pauperis* in this civil action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2401, *et seq*. Plaintiff seeks monetary damages from the United States of America ("Defendant") for alleged sexual assault and negligence arising out of events at the United States Penitentiary, Atwater. (ECF No. 1.) The parties have consented to the jurisdiction of the United States Magistrate Judge for all purposes, including trial and entry of judgment. (ECF No. 49.)

On February 28, 2022, Defendant filed a motion for summary judgment on the grounds that (1) Plaintiff did not timely file his complaint in this action following denial of administrative claims submitted in June and August 2018; and (2) Plaintiff failed to exhaust administrative remedies for claims based on events occurring after those described in the August 2018

1

administrative claim.[1]  (ECF No. 50.)  Plaintiff timely filed an opposition on August 31, 2022, (ECF No. 73), and Defendant filed a reply on September 14, 2022, (ECF No. 74).  The motion for summary judgment is deemed submitted.[2]  L.R. 230(l).

## II.     LEGAL STANDARDS

### A. Summary Judgment

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

---

[1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1988); *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988).  (ECF No. 52.)

[2] This motion was dropped inadvertently by the Court's CM/ECF reporting/calendaring system resulting in the prolonged delay in resolution.

**B.  Federal Tort Claims Act**

Under the FTCA, an "action shall not be instituted upon a claim against the United States for money damages" unless a plaintiff has exhausted administrative remedies by filing a claim with the appropriate federal agency within two years of the act or injury. 28 U.S.C. § 2675(a). Thus, only after an administrative claim is denied, or deemed denied, may a claimant file an action in federal court. *Id.*; *see also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."). If the agency denies an administrative claim, suit must be filed within six months of the date of mailing of such denial. 28 U.S.C. § 2401(b).

Significantly, exhaustion of administrative remedies cannot be waived. *Brady v. United States*, 211 F.3d 499, 503 (9th Cir. 2000); *see also Vacek v. United States Postal Service*, 447 F.3d 1248, 1250 (9th Cir. 2006) ("the exhaustion requirement . . . must be interpreted strictly."). However, the statute of limitations is subject to equitable tolling in certain circumstances. *See United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1638 (2015) (holding "FTCA's time bars are nonjurisdictional and subject to equitable tolling.").

**III.   DISCUSSION**

**A.  Undisputed Material Facts ("UMF")**[3]

1. On June 23, 2018, the Bureau of Prisons received an SF 95 form from Plaintiff dated June 12, 2018 (the "June 2018 Claim") for an alleged sexual assault that he asserted took place on May 14, 2018. (ECF No. 50-3, Ex. A, Declaration of Jennifer Vickers ¶ 4 & Ex. 1; ECF No. 50-4, Ex. B, Deposition of Kentrell Willis 17 & Ex. 2.)

2. The June 2018 Claim sought $35 million in damages. (Vickers Decl. Ex. 1; Willis Depo. 17.)

---

[3] *See* Defendant's Statement of Undisputed Facts, (ECF No. 50-2). Plaintiff did not comply with the Local Rules in preparing his opposition, including by failing to reproduce Defendant's Statement of Undisputed Facts and providing "a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support" of any disputed facts. L.R. 260(b). As a result, Defendant's Statement of Undisputed Facts is accepted except where brought into dispute by Plaintiff's declaration signed under penalty of perjury, (ECF No. 73 at 8-26), or Plaintiff's Statement of Disputed Factual Issues, (ECF No. 73 at 4-7). Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

3. The June 2018 Claim was denied on September 13, 2018. (Vickers Decl. ¶ 5 & Ex. 2; Willis Depo. 20.)
4. On August 8, 2018, the Bureau of Prisons received an SF 95 form from Willis dated July 31, 2018 (the "August 2018 Claim"). (Vickers Decl. ¶ 6 & Ex. 3; Willis Depo. 20-21 & Ex. 3.)
5. The August 2018 Claim asserted $5 million in damages for alleged retaliation on July 27, 2018.  (Vickers Decl. Ex. 3; Willis Depo. 21.)
6. The August 2018 Claim asserted that on July 27, 2018, officers M. Fontes and M. Pavey conspired to have Willis murdered by two Mexican gang members by placing those gang members in the same exercise cage as Willis. (Vickers Decl. Ex. 3.)
7. The August 2018 Claim was denied on August 9, 2018. (Vickers Decl. ¶ 7 & Ex. 4.)
8. Willis was aware that he had filing deadlines in February and March 2019 for his August 2018 and June 2018 Claims, respectively—although he did not know the precise dates. (Willis Depo. 48.)
9. Willis became an inmate at USP Atwater in July 2017, and was transferred to USP Lewisburg on November 5, 2018. (Vickers Decl. ¶ 3; Willis Depo. 129.)
10. On November 21, 2018, Willis submitted a Central Office Administrative Remedy Appeal in Case Number 951565-A1 (the "November 2018 Appeal"). (Willis Depo. 24 & Ex. 5.)
11. Willis prepared the November 2018 Appeal while at USP Lewisburg. (Willis Depo. 24 & Ex. 5 (listing institution as USP Lewisburg).)
12. The November 2018 Appeal contained, among other things, the following statements:
    a. "On May 14, 2018, I was really sexually assaulted by officers, while they (Lt. Martinez, J. Ramos Jr., M. Fontes, A. Fontes, K. Miller, Mr. Lopez and Lt. Mr. Hamilton was occupying the camera) were placing me in ambulatory restraints in the SHU of U.S.P. Atwater, on B-range in Cell #126 at approximately 12:45pm."
    b. "On July 27, 2018 at approximately 7:30am, where officers Mr. M. Fontes and Mr. Pavey, placed two (2) active Mexican gang members in my recreation cage and

4

told them to murder me because I'm a snitch."

c. "Mr. M. Fontes and Mr. Pavey knew I was on protective custody status and wasn't supposed to be in the recreation cages with anyone except for my cellmate or other protective custody inmates."

(Willis Depo. Ex. 5.)

13. On January 28, 2019, the Bureau of Prisons received an SF 95 form from Willis dated January 10, 2019 (the "January 2019 Claim"). (Vickers Decl. ¶ 8 & Ex. 5; Willis Depo. 27-28 & Ex. 4.)

14. Willis prepared the January 2019 Claim while at USP Lewisburg. (Vickers Decl. Ex. 5; Willis Depo. 24-25, 27-28 & Ex. 4 (listing address as USP Lewisburg).)

15. The January 2019 Claim included 30 pages of medical and psychology records from June 26; July 6, 27, and 30; and August 2, 6, 8, 12, 13, and 14, 2018. (Vickers Decl. Ex. 5; Willis Depo. 27- 28 & Ex. 4.)

16. In December 2018, Willis requested that the prison medical and psychological services provide him with the medical and psychological records that he subsequently attached to his January 2019 Claim. (Willis Depo. 37-39.)

17. The January 2019 Claim asserted $1 trillion in damages. (Vickers Decl. Ex. 5; Willis Depo. Ex. 4.)

18. The January 2019 Claim contained, among other things, the following statements:

a. "These enclosed documents proves [sic] physical, mental and emotional injuries that I've experienced for the reporting and filing of the sexual assault that occurred on May 14, 2018…see Admin. Claim No. TRT-WXR-2018-15543."

b. Willis identified those he had reported the alleged sexual assault to as the Western Regional Office, the U.S. Department of Justice, USP Atwater's psychology department, Capt. B. Hurte, Capt. Schank, SIS, SIA, Mr. Lyons, Mr. Castaneda, Ms. J. Isho, Lt. P. Scott, Lt. Zaragoza, Mr. Heldman, Mr. S. Spears (RN/IDC/IOP), Mr. Z. Ballesil (RN), and Mr. Alatery (MA).

c. Willis identified "the perpetrators of this viscious [sic] sexual assault" as

5

"Lieutenant Mr. Hamilton (camera operator), Lieutenant Mr. Martinez, Mr. J. Ramos Jr., Mr. A Fontes, Mr. M. Fontes, Mr. K. Miller, Mr. Lopez"

d. "On July 27, 2018, at approximately 7:30am, during the pulling of recreation of C. Range, of the Special Housing Unit, of U.S. Penitentiary Atwater, the recreation officer Mr. M. Fontes . . . knew that I was on protective custody status . . . but . . . took it upon himself to deliberately place two (2) active Mexican gang members in my recreation cage (see camera from this incident), and ordered them to murder me and they attacked me."

(Vickers Decl. Ex. 5; Willis Depo. Ex. 4.)

19. The January 2019 Claim asserts numerous facts that were not in the August 2018 Claim, including the following:

a. Willis was placed on suicide watch on August 6, 2018 because he was "psychologically frustrated because of sexual assault on May 14, 2018";

b. Willis made "another PREA claim reported to Juliette Bowers Psy. D. on August 8, 2018";

c. Willis went on "suicide watch because staff confiscated family photos for filing PREA claims," which he reported to Dr. Bowers on August 11-14, 2018.

(Vickers Decl. Ex. 5, at US 000009; Willis Depo. 29-31 & Ex. 4.)

20. The January 2019 Claim was denied on February 14, 2019. (Vickers Decl. ¶ 9 & Ex. 6.)

21. Aside from the June 2018 Claim, the August 2018 Claim, and the January 2019 Claim, the Bureau of Prisons has no record of receiving any SF 95 forms or any other FTCA administrative claims from Willis relating to his time as an inmate from USP Atwater. (Vickers Decl. ¶ 10.)

22. Willis filed his Complaint on May 28, 2019. (ECF No. 1.)

23. Willis prepared his Complaint using a draft of a complaint that he had started when he was still at USP Atwater, and his medical and psychology records that he had attached to his January 2019 Claim. (Willis Depo. 53-55.)

24. Willis did not need to consult any records to know the date of the May 14, 2018 use of force or the July 28, 2018 rec yard incident because he knew those dates from memory. (Willis Depo. 50.)

25. The June 2018 and August 2018 Claims are the only FTCA claims involved in this lawsuit. (Willis Depo. 15-16, 32-33.)

### B. Parties' Positions

Defendant contends that the factual allegations in Plaintiff's complaint fall into three groups: (1) the alleged May 14, 2018 sexual assault and its immediate aftermath (covered in the June 2018 Claim); (2) the alleged July 27, 2018 retaliation for reporting the assault (covered in the August 2018 Claim); and (3) post-July 2018 assaults, retaliatory actions, and other events. Defendant argues that claims relating to the first two groups are time-barred, and claims relating to the third group are jurisdictionally barred due to failure to exhaust remedies and because Plaintiff has expressly disclaimed that he is suing for damages on those claims. (ECF No. 50-1 at 5.)

In opposition, Plaintiff contends that he brings this suit under the FTCA based on the two administrative claims that he submitted in June 2018 and August 2018, along with the claim he submitted in January 2019, which he characterizes as a "reconsideration of the August 2018 Administrative Claim." (ECF No. 73 at 1.)  As to the August 2018 Claim, Plaintiff challenges Defendant's assertion that he did not timely file his complaint within six months of the date the claim was denied.  Instead, Plaintiff contends that he "filed a reconsideration of the denial of the August 2018 claim" in January 2019,"[t]hereby, restarting the six month statute of limitations with the filing of the Jan. 2019 (reconsideration.)." (*Id.*)  Plaintiff states that the January 2019 reconsideration was denied on February 14, 2019, "making the deadline to file a complaint in the District Court – August 14, 2019." (*Id.*)  Plaintiff notes that he filed the complaint on May 28, 2019, and contends that "the August 2019 Claim was saved by the Jan. 2019  reconsideration," "[t]hereby making the August 2018 claim timely." (*Id.* at 2.)  As to both the June 2018 Claim and that August 2018 Claim, Plaintiff asserts that the limitations period should be equitably tolled because he needed access to his legal materials, which were in the possession of prison

7

employees and promised to Plaintiff before the deadlines.  Plaintiff also claims entitlement to equitable estoppel because he relied on the promises of prison employees regarding his legal materials and refrained from commencing his action within the limitations period.  (*Id.* at 3.)

Defendant replies that the January 2019 Claim was not a request for reconsideration of the August 2018 Claim.  Defendant also replies that the doctrine of judicial estoppel precludes Plaintiff from taking an inconsistent position and now asserting that the August 2018 Claim was timely.  Defendant further contends that Plaintiff has not demonstrated his entitlement to equitable tolling for the July 2018 Claim or the August 2018 Claim because, at a minimum, Plaintiff's legal materials were not necessary in order to prepare his complaint in this action.  Defendant additionally contends that equitable estoppel does not apply.  Finally, Defendant argues that Plaintiff has waived all claims and damages for post-July 2018 events, noting that Plaintiff has not opposed the motion for summary judgment as to those events.

### C. Analysis of Defendant's Motion

According to the undisputed facts, Plaintiff submitted an administrative claim to the Bureau of Prisons on June 12, 2018, regarding an alleged May 14, 2018 sexual assault. (UMF 1; ECF No. 1 at 2.)  The claim was denied on September 13, 2018. (UMF 3; ECF No. 1 at 2.)  Plaintiff submitted a second administrative claim to the Bureau of Prisons, which was received on August 8, 2018, regarding alleged retaliation on July 27, 2018.  (UMF 4-6.)  The claim was denied on August 9, 2018. (UMF 7.)  Therefore, an action needed to be initiated with a district court on Plaintiff's second claim no later than February 9, 2019, and no later than March 13, 2019, on his first claim. (28 U.S.C. § 2401(b); UMF 8.)  Plaintiff did not file the complaint in this action until May 28, 2019.  (ECF No. 1.)

#### 1. June 2018 Claim

Plaintiff does not dispute that absent equitable relief, his June 2018 Claim relating to the alleged May 14, 2018 sexual assault is untimely. (*See* ECF No. 73 at 2.)  Plaintiff appears to contend that application of the doctrines of equitable tolling and/or equitable estoppel are warranted.

As to equitable tolling, Plaintiff suggests that he could not prepare his complaint without

access to his "legal materials," which were in the possession of the prison employees at USP Lewisburg. (ECF No. 73 at 2.) Plaintiff indicates that he did not receive his legal materials until April 5, 2019, (ECF No. 73 at 15), which is after the March 13, 2019 limitations deadline.

As previously indicated, the six-month limitations period is subject to equitable tolling. *Wong*, 575 U.S. at 412, 419. In order to demonstrate equitable tolling, a plaintiff must show that (1) he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013), *aff'd and remanded sub nom. United States v. Wong*, 575 U.S. at 405. The standard is very high. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("a garden variety claim of excusable neglect" is not enough to show equitable tolling); *Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380, 384-86 (9th Cir. 1996) (affirming rejection of equitable tolling argument where plaintiff did not diligently pursue her claim by filing suit on time). The burden is on the plaintiff to show that equitable tolling is appropriate. *United States v. Marolf,* 173 F.3d 1213, 1218 n.3 (9th Cir. 1999).

Plaintiff has failed to make such a showing here. Plaintiff asserts that he needed his "legal materials" to prepare the complaint, but the undisputed factual evidence belies such a contention. Plaintiff asserts that he "did not have enough information in his possession to file a well-pleaded complaint," (ECF No. 73 at 6), but the undisputed evidence reflects that Plaintiff prepared his complaint using the medical and psychological records he had in possession at the time of his January 2019 Claim. (UMF 15, 23.) Plaintiff proffers no explanation as to why he could not have timely filed his complaint with these records before the March 13, 2019 deadline. As Defendant contends, Plaintiff cannot plausibly claim that an extraordinary circumstance prevented him from preparing his complaint when, by his own admission, he already had the essential materials to prepare it and file it on time. *See*, *e.g.*, *Gutierrez v. Hill*, No. 22CV1413-JO-LR, 2023 WL 6215291, at *4 (S.D. Cal. Sept. 25, 2023) (rejecting application of equitable tolling where habeas petitioner failed to show that deprivation of legal materials prevented him from filing a timely petition).

Plaintiff appears to claim that he needed from his legal materials the "dates and times" he "spoke to numerous U.S.P. Atwater employees regarding the May 14, 2018 sexual assault" to file

a well-pleaded complaint. (ECF No. 73 at 6.) It is not evident that this information was necessary to file a well-pleaded complaint concerning the alleged May 14, 2018 sexual assault. The undisputed evidence reflects that prior to the filing deadline, and without access to any "legal materials," Plaintiff prepared and submitted documents in November 2018 and January 2019 containing all material facts and relevant details of the alleged May 14, 2018 sexual assault— including the date and time, the officers involved, and the cell block and number where it occurred. (UMF 12, 18, 23.) The January 2019 Claim also included relevant information regarding to whom Plaintiff reported to the alleged sexual assault. (UMF 18.b.)

Plaintiff has not demonstrated that he pursued his rights diligently or, critically, that it was impossible to file a timely complaint because of some exceptional circumstance. Accepting that Plaintiff diligently requested his legal materials after his transfer to USP Lewsiburg, (*see*, *e.g.*, Doc. 73 at 10, Willis Decl. ¶¶ 11-14, 16, 21), the undisputed evidence reflects that Plaintiff knew of the relevant filing deadlines, he had the necessary information to prepare and file a complaint relating to the alleged May 14, 2018 assault in a timely manner, and he successfully submitted other documents containing all material and relevant facts. (UMF 8, 10-12, 13-18, 23.) There is no indication that the delay in receiving his legal materials wholly prevented him from or made it impossible for him to timely file a complaint. *Ramirez v. Yates*, 571 F.3d 993, 1011 (9th Cir. 2009) (determining petitioner not entitled equitable tolling where petitioner offered no explanation why restricted access to materials made it impossible for him to timely file petition but not other legal filings). For these reasons, the Court concludes that the doctrine of equitable tolling does not apply.

Plaintiff also avers that he was unable to file a well-pleaded complaint before the limitations period expired because of the actions of prison employees. To that end, Plaintiff claims that prison employees promised him that he would have his legal materials before the deadlines, he relied on these promises, and "[b]ecause of such reliance refrained from commencing an action within the limitations period." (ECF No. 73 at 2.) Plaintiff therefore suggests that equitable estoppel tolls the limitations period. (ECF No. 73 at 3.)

Equitable estoppel applies "when a plaintiff who knows of his cause of action reasonably

relies on the defendant's statements or conduct in failing to bring suit." *Stitt v. Williams*, 919 F.2d 516, 522 (9th Cir. 1990); *see also Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1009 (9th Cir. 2011), as amended (Aug. 19, 2011) (explaining doctrine of equitable estoppel focuses primarily on the action taken by the defendant in preventing a plaintiff from filing suit). The doctrine of equitable estoppel is often referred to as fraudulent concealment. *Est. of Amaro v. Cty of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011). To demonstrate an entitlement to equitable estoppel, a plaintiff must show: (1) knowledge of the true facts by the party to be estopped, (2) intent to induce reliance or actions giving rise to a belief in that intent, (3) ignorance of the true facts by the relying party, and (4) detrimental reliance. *Bolt v. United States*, 944 F.2d 603, 609 (9th Cir. 1991). Additionally, for the government to be estopped "there must be affirmative misconduct (not mere negligence) and a serious injustice outweighing the damage to the public interest of estopping the government." *Id.*

Plaintiff has failed to produce evidence from which a reasonable jury could conclude that the actions of prison employees prevented him from a full understanding of the true facts of the alleged May 14, 2018 assault, as evidenced by his November 2018 Appeal and January 2019 Claim.[4] (UMF 12, 18.) Plaintiff also has failed to produce evidence that he was unaware of the deadline to file his FTCA claim regarding the alleged May 14, 2018 sexual assault. (UMF 8.) Further, Plaintiff offers no evidence that prison employees engaged in affirmative misconduct. There is nothing in the record to indicate that prison employees prevented Plaintiff from filing suit—even if prison employees at USP Lewisburg did not provide Plaintiff with requested legal materials before the March 13, 2019 deadline. Equitable estoppel requires action taken by a defendant to prevent a potential plaintiff from filing suit. *See Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002). Plaintiff asserts, in a conclusory fashion, that prison employees intended to prevent him from filing before the limitations period and that their motive was to mislead him from filing. (ECF No. 73 at 7.) These conclusory assertions are not sufficient.

---

[4] *See*, *e.g.*, *Crane v. Rodriguez*, No. 2:15-cv-0208 TLN KJN P, 2023 WL 113773, at *8 (E.D. Cal. Jan. 5, 2023), report and recommendation adopted, No. 2:15-cv-00208 TLN KJN, 2023 WL 2666709 (E.D. Cal. Mar. 28, 2023) (concluding doctrine of fraudulent concealment/equitable estoppel not applicable where defendant's actions "did not deprive plaintiff of a full understanding of his claims").

Plaintiff also contends that various prison employees promised that he would receive his legal materials before the deadlines, and he relied on those statements, refraining from filing his complaint. (ECF No. 73, Willis Decl. ¶¶ 413, 15, 17, 21, 42 ("I relied on the act, promises and misrepresentations . . . and because of such reliance refrained from commencing action within the limitations period.")). However, "[t]o satisfy the fourth element of estoppel, the detrimental reliance must be *reasonable.*" *Nickelson v. United States*, No. CV 14-3654 (AJW), 2016 WL 6495358, at *4 (C.D. Cal. Nov. 2, 2016), judgment entered, No. CV 14-3654 (AJW), 2016 WL 6518425 (C.D. Cal. Nov. 2, 2016). There is no evidence or information suggesting that prison employees' statements or promises regarding the provision of his legal materials would have led Plaintiff to reasonably believe that he did not need to timely file a complaint. There is no indication the prison employees misrepresented Plaintiff's FTCA filing deadlines or promised that any late filing would be accepted or otherwise excused. *See Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008) (denying application of equitable estoppel where plaintiffs failed to point to any misrepresentation that concealed basis of claims or "any promise by which the Defendants discouraged plaintiffs from timely asserting their rights"). For these reasons, the Court finds that the doctrine of equitable estoppel is not applicable.

The Court concludes that Plaintiff's claims relating to the alleged May 14, 2018 sexual assault and covered in his June 2018 Claim are time barred.

### 2.  August 2018 Claim

Plaintiff contends that he filed for reconsideration of the August 2018 Claim in January 2019,"[t]hereby, restarting the six month statute of limitations with the filing of the Jan. 2019 (reconsideration.)." (ECF No. 73 at 1 .) Plaintiff states that the January 2019 reconsideration was denied on February 14, 2019, arguing this made "the deadline to file a complaint in the District Court – August 14, 2019." *(Id.* at 2.) Plaintiff filed the complaint on May 28, 2019, and contends that "the August 2019 Claim was saved by the Jan. 2019 reconsideration," "[t]hereby making the August 2018 claim timely." *(Id.)* Plaintiff further argues that the January 2019 Claim was a proper reconsideration, did not allege any new claims, is part of this action, and restarts the statute of limitations. (ECF No. 73 at 4-5.)

The parties dispute whether Plaintiff's January 2019 Claim is a proper reconsideration of the August 2018 claim. The Court finds it unnecessary to address this issue, however, as it finds Defendant's argument regarding judicial estoppel persuasive. Defendant contends that the Court should resist crediting Plaintiff's argument regarding reconsideration because Plaintiff took a directly inconsistent position for nearly two years before this Court and the Ninth Circuit. Defendant points out that Plaintiff previously conceded that the August 2018 Claim was time-barred absent equitable relief. Defendant cites, among other examples, the following:

- Willis's Motion for Extension of Time to file his Complaint after the limitations period, filed on the same day as his Complaint, did not reference the January 2019 Claim and repeatedly identified a February 9, 2019 deadline to file suit on his August 2018 Claim. ECF No. 4, at 1, 3-8. He stated that by April 5, 2019, "my deadlines had already come and went," and he argued only that he should be permitted to file his Complaint after the statute of limitations due to "excusable neglect." ECF No. 4, at 7.

- Willis's Ninth Circuit appellate brief explicitly stated that he had to file an action "no later than February 9, 2019 on his second [August 2018] claim," and that he "missed" the deadline and "was prevented from filing his FTCA lawsuit until after the statute of limitations had run out." 9th Cir. No. 20-15127, Dkt. No. 14, at 3, 10, 41, 48; *see also id.* at 28, 48 (identifying February 2019 filing deadline, which "had been missed"). He again argued only that he was entitled to equitable tolling or equitable estoppel, and he never mentioned the January 2019 Claim. *Id.* at 14, 18. He also asserted that he was asserting only $5 million on the "second FTCA claim," rather than the $1 trillion in the January 2019 Claim. *Id.* at 13.[5]

(ECF No. 74 at 6-7.) Defendant therefore avers that Plaintiff should be judicially estopped from now taking a different legal position that his August 2018 Claim was timely filed. (*Id.* at 7.)

Judicial estoppel is "an equitable doctrine invoked by a court at its discretion," the purpose of which is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (internal quotation marks and citation omitted). When applying the doctrine of judicial estoppel courts consider: "(1) whether a party's position in the later judicial proceeding is clearly inconsistent with that party's earlier position, (2) whether the party persuaded the first court to accept the earlier position, so that judicial acceptance of an

---

[5] The Court may take judicial notice of the records of other courts. *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("We may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts."); *U.S. v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

inconsistent position in a later proceeding would create the perception that one of the two courts was misled, and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Randle v. Crawford*, 604 F.3d 1047, 1053–54 (9th Cir. 2010).

Considering the relevant factors, the Court concludes that application of the doctrine of judicial estoppel is warranted. With respect to the first factor, Plaintiff's current position is inconsistent with his earlier position in this litigation and as expressed to the Ninth Circuit. Plaintiff previously conceded that the August 2018 Claim was not timely filed and that he was seeking equitable relief. (*See Willis v. United States of America*¸ 9th Cir. No. 20-15127, Dkt. No. 14 at 3 and 10 (admitting action needed to be initiated with district court on August 2018 claim no later than February 9, 2019), 14 and 18 (asking court of appeals to review "to see if equitable tolling and/or equitable estoppel should apply to this action/case), 41 (asserting that he suffered injury because he was prevented from filing his FTCA lawsuit "until after the statute of limitations had run out".) Plaintiff now contends that the August 2018 Claim is timely, as it was saved by a request for reconsideration. (ECF No. 73 at 2 ["The August 2018 Claim was saved by the Jan. 2019 reconsideration. Thereby, making the August 2018 Claim timely."].) These positions—untimely versus timely—are not consistent. With respect to the second factor, Plaintiff persuaded the Ninth Circuit to accept his position that his August 2018 Claim was time barred absent equitable tolling. Indeed, in considering Plaintiff's appeal, the Ninth Circuit determined that it was "not evident at [the] early stage of proceedings that equitable tolling would not apply to extend the limitations period," thereby implicitly accepting Plaintiff's position that the action was otherwise time barred. (ECF No 23 at 2.) With respect to the third factor, Plaintiff's inconsistent position results in an unfair advantage by allowing him to assert multiple inconsistent or otherwise incompatible bases to evade the limitations period. These factors favor application of judicial estoppel.

Plaintiff also argues that he is entitled to equitable relief from the limitations period for his August 2018 Claim. The Court disagrees. As to equitable tolling for the August 2018 Claim, Plaintiff appears to assert that he needed information from his legal materials of "the dates and

times of the harrassment [sic] leading up to the date of the July 27, 2018 orchestrated attempted murder/assault" to file a well-pleaded complaint. (ECF No. 73 at 6.)   However, it is not evident that factual allegations of purported harassment *prior* to July 27, 2018, were necessary to file a well-pleaded complaint regarding the events alleged to have occurred *on* July 27, 2018.  The undisputed evidence reflects that prior to the filing deadline, and without access to any "legal materials," Plaintiff prepared and submitted documents in November 2018 and January 2019 containing the material facts and relevant details of the alleged retaliation on July 27, 2018, including what happened, when it happened, and who was involved. (UMF 12.b., 12.c., 18.d.)

Insofar as Plaintiff argues that he is entitled to application of the doctrine of equitable estoppel as to his August 2018 Claim, this argument fails for the same reasons discussed above as for his June 2018 Claim.

For these reasons, the Court concludes that Plaintiff is judicially estopped from asserting that his August 2018 Claim is timely based on purported reconsideration. The Court further concludes that Plaintiff is not entitled to application of the doctrines of equitable tolling or equitable estoppel.  Accordingly, Plaintiff's claims relating to the alleged July 27, 2018 retaliation and covered in his August 2018 Claim are time barred.

### 3. Post-July 2018 Events

Although Plaintiff's complaint references numerous alleged acts of retaliation after July 2018, Plaintiff has testified that he is not seeking damages for those acts or basing his suit on them. (UMF 25.) Plaintiff also has not opposed Defendant's Motion for Summary Judgment as to post-July 2018 events. The Court therefore will grant this portion of Defendant's motion for summary judgment.

### IV.     CONCLUSION AND ORDER

Based on the above, Defendant's motion for summary judgment (ECF No. 50) is GRANTED.
IT IS SO ORDERED.

Dated:   **April 9, 2024**            /s/ *Barbara A. McAuliffe*            
                                            UNITED STATES MAGISTRATE JUDGE

15